UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUGLAS JERRETT,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN, Acting Commissioner Of Social Security,<br><br>                Defendant. | Case No. 2:13-CV-02140-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Douglas Jerrett appeals the ALJ's decision finding him not disabled.[1] The ALJ found Mr. Jerrett's severe impairments were "substance addiction, depression, attention deficit hyperactivity disorder, Meniere's disease, and status post rotator cuff repair," and that these impairments did not meet the requirements of a Listed Impairment. Tr. 24-25. Mr. Jerrett does not challenge these findings. Rather, he contends the ALJ erred by (1) improperly discounting his testimony, and (2) misevaluating the medical evidence regarding Meniere's disease and his shoulder impairment. Dkt. 18 at 1-2. Mr. Jerrett argues these errors were harmful because the ALJ made a RFC determination and posed hypothetical questions to the vocational expert ("VE") that failed to account for all of his limitations. Mr. Jerrett seeks a remand of the matter

---

[1] The ALJ's decision is the Commissioner's final decision because the Appeals Council denied review. Tr. 1. The remainder of the procedural history is not at issue and need not be discussed.

REPORT AND RECOMMENDATION - 1

for either an award of benefits or further administrative proceedings.  As discussed below, the ALJ gave at least one valid reason, supported by substantial evidence, to discount Mr. Jerrett's testimony and Dr. Martin Levine's medical opinions.  The Court should thus affirm the ALJ's determinations as to those matters.  However, the ALJ erred in rejecting Dr. Dan Phan's opinion that Mr. Jerrett had reaching, twisting, turning, pushing and pulling limitations.  This error was harmful because the ALJ failed to account for these limitations in assessing Mr. Jerrett's RFC and in posing questions to the VE.  Accordingly, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C § 405(g) with direction that the ALJ reevaluate Dr. Phan's opinions.

## DISCUSSION

**A.     The ALJ's Assessment of Mr. Jerrett's Testimony**

The ALJ gave at least two valid reasons to discount Mr. Jerrett's testimony about the severity of his symptoms.  First, the ALJ found Mr. Jerrett "did not stop working due to mental or physical conditions."  Tr. 28.  This is a clear and convincing reason to discount Mr. Jerrett's testimony.[2]  Mr. Jerrett testified that he stopped working because he was fired from his job, not because he had a disabling impairment.  Tr. 45.

Second, the ALJ found that after Mr. Jerrett was fired, he began receiving Washington State unemployment benefits, and was still receiving those benefits at the time the ALJ conducted the hearing in the case.  Tr. 28.  This finding was based on Mr. Jerrettt's testimony that to obtain state unemployment benefits, he was required to affirm to the state each week that he was "able to work."  Tr. 46.  Mr. Jerrett further testified that as a union member, he did not

---

[2] *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment).

have to submit a job search log to the state but was required to be on his union's "work list," and take a job if the union called. Tr. 47.  Based on this testimony, the ALJ properly concluded that Mr. Jerrett was "telling the State of Washington he can work during the same time he is alleging disability in connection with his Social Security Disability claim, which is contradictory and detracts from his credibility." Tr. 29.  *See e.g., Carmickle v. Commiss'r of Social Sec Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (recognizing receipt of unemployment benefits could affect a claimant's credibility).

      Mr. Jerrett argues that *Carmickle* is inapplicable because he testified he would try to work but wasn't sure what he could do, and that his willingness to work on a part-time basis does not undermine his testimony about the severity of his impairments. Dkt. 18 at 15.  The record does not support the argument. Mr. Jerrett never held himself out as available only for part-time work, and thus *Carmickle* is applicable. In fact, he testified that if his union called, he would take the job, Tr. 47.  Mr. Jerrett also testified, he viewed himself as a "one trick pony" when it came to job skills. Tr. 48.  His uncertainty about exactly what type of work he could do went to his belief that he had limited skills and does not evidence that he held himself out as available only for part-time work.

      Mr. Jerrett also argues the ALJ erred because he should not be required to sit "passively with zero income while awaiting a determination on his claim of disability," and that his eligibility to receive unemployment benefits "comports with [his] allegations of disability." Dkt. 20 at 3.  This argument cannot be squared with *Carmickle*.  That case authorized the ALJ to discount Mr. Jerrett's testimony because he was simultaneously representing to Washington State he could work in order to get benefits, and representing to the Social Security Administration he could not perform any work.  Further if the Court were to adopt Mr. Jerrett's

REPORT AND RECOMMENDATION - 3

line of reasoning, the Court would have to abandon the rule set forth in *Carmickle* because Mr. Jerrett's argument—avoidance of "destitution" through receipt of unemployment benefits—would apply in virtually every case. Dkt. 20 at 3.

Accordingly, because the ALJ gave at least two clear and convincing reasons, supported by substantial evidence, to discount Mr. Jerrett's credibility, the Court should affirm the ALJ's credibility determination even if the other reasons Mr. Jerrett challenged were invalid. *See Carmickle*, 533 F.3d at 162 (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

**B.     The ALJ's Evaluation of the Medical Evidence**

*1.      Martin Levine, M.D.*

On June 15, 2012, examining Dr. Levine completed a "Medical Source Questionnaire Re: Meniere's Disease" in which he opined Mr. Jerrett suffered from Miniere's disease which was "stable"; that he had "Miniere's attacks" about twice a month; that the attacks could be precipitated by workplace noise, flashing and bright lights; and that Mr. Jerrett would miss about two days a month due to the disorder. Tr. 345-48. Mr. Jerrett argues the ALJ improperly discounted Dr. Levine's opinion that he would miss work twice a month. Dkt. 18 at 6, 10. The argument fails.

The ALJ rejected the doctor's opinion for six reasons, at least two of which were valid. The ALJ properly found the doctor had a limited treating relationship. In assessing the weight to give a medical opinion, an ALJ may consider the "length of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment

REPORT AND RECOMMENDATION - 4

relationship" between the patient and the treating physician. 20 C.F.R. §§ 404. 1527(d)(2) (i)-(ii), 416. 927(d)(2)(i)-(ii); *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007).  Here, substantial evidence supports the ALJ's finding because there is no dispute that Dr. Levine examined Mr. Jerrett only twice, and spoke to him over the phone several times.  Tr. 31.

The ALJ also properly rejected the doctor's opinion about the frequency and length of Mr. Jerrett's Miniere's attacks finding the opinion was based solely on Mr. Jerrett's non-credible self reports.  Tr. 31.  An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  However, an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints **and** supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001).

Here, although Dr. Levine did not indicate he disbelieved Mr. Jerrett, he clearly relied primarily on Mr. Jerrett's self-reports in opining he would have Miniere's attacks twice a month. Dr. Levine opined Mr. Jerrett would have Miniere's attacks twice a month and that each attack would last 6 to 12 hours.  Tr. 346.  But the doctor's records do not indicate he observed Mr. Jerrett having a Miniere's attack, and do not document Mr. Jerrett was having Mineier's attacks twice a month.  There is thus nothing in Dr. Levine's treatment record that supports his opinion about the frequency and duration of the attacks, other than Mr. Jerrett's self-reports.  As such, the record shows the doctor's opinion could only have been primarily based on Mr. Jerrett's self-reports.  Under these circumstances, the ALJ properly discounted the doctor's opinion. *See e.g. Ryan v. Commissn'r of Soc. Sec.,* 528 F.3d 1194, 1999-2000 (9th Cir. 2008) ("There is nothing in

REPORT AND RECOMMENDATION - 5

the record to suggest that Dr. Randhawa disbelieved Ryan's description of her symptoms, or that Dr. Randhawa relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that Ryan was incapable of maintaining a regular work schedule.).[3]

### 1. Dan Phan, M.D.

Mr. Jerrett contends the ALJ harmfully erred by rejecting Dr. Phan's opinion that "he should avoid jobs require[ing] frequent reaching, twisting, turning, pushing and pulling. Tr. 227. The ALJ rejected this opinion on the grounds that "the examinations [Dr. Phan] recorded do not support such restrictions. He reported the "acromioclavicar areas were tender, but range of motion was intact, sensation was intact, there was no gross atrophy, and the claimant had 5+/5 strength in the upper extremities." Tr. 30. The Commissioner argues this is a proper basis to reject Dr. Phan's opinion because an ALJ may reject a doctor's opinion where contradicted by the doctor's own notes and observations. Dkt. 19 at 10.

The ALJ's reasoning and the Commissioner's argument are not supported by substantial evidence. The ALJ and Commissioner conflate Dr. Phan's findings regarding strength and range of motion with his findings regarding pain caused by Mr. Jerrett's "status post rotator cuff repair" which the ALJ acknowledged was a severe impairment. Dr. Phan's opinion was not based on his findings regarding Mr. Jerrett upper body normal strength and range of motion. Tr. 226. Rather, the opinion was based on his finding regarding pain. Upon examination, he noted the "acromioclavicular [shoulder] areas [were] tender with palpation," *id*., and that despite surgery for a rotator cuff injury, Mr. Jerrett still had shoulder pain when lifting his arms and when he twisted and turned his body. Tr. 225. The doctor further opined that "with the rotator

---

[3] The Court need not determine whether the other reasons the ALJ gave to discount the doctor's opinion were erroneous because any error would not negate the validity of the overall credibility determination and thus would be harmless. *Carmickle*, 533 F.3d 1155.

cuff problems, [Mr. Jerrett] should avoid jobs require[ing] frequent reaching, twisting, turning, pushing and pulling." Tr. 227.  In short, the limitation Dr. Phan found was based on pain caused by rotator cuff problems, not deficits in strength or range of motion.  Accordingly, the ALJ erred in rejecting Dr. Phan's opinion as inconsistent with his examination findings.

The ALJ's error was not harmless.  Her residual functional assessment failed to account for the limitation Dr. Phan found.  *See* Tr. 26.  Similarly, the hypothetical question that the ALJ presented to the VE failed to include the limitations found by Dr. Phan, and the VE testified Mr. Jerrett would not be able to perform the jobs he identified if he had reaching, pushing, pulling, twisting limitations.  Tr. 71.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C § 405(g).  On remand, the ALJ should reevaluate Dr. Phan's opinion, develop the record as needed, utilizing the five step disability evaluation process as appropriate..

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **July 1, 2014.**  If no objections are filed, the Clerk should note the matter for **July 4, 2014** as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed **eight** pages.  The failure to timely object may affect the right to appeal.

DATED this 17th day of June, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8